REBER, Assignee, etc., v. GUNDY.

(*Circuit Court, W. D. Pennsylvania.* January 7, 1883.)

1. LIMITATIONS IN BANKRUPTCY—REV. ST. § 5057—SUIT TO ANNUL JUDGMENT.

Section 5057 of the Revised Statutes is not confined to contests involving the title to or ownership of the bankrupt's property, but, in explicit terms, it comprehends all claims of adverse interests which touch or relate to any property or rights of property transferable to or vested in the assignee; and a suit in equity by an assignee, to annul a judgment confessed by a bankrupt under circumstances that make it a preference in fraud of the bankrupt law, will be barred by this section, "unless brought within two years from the time when the cause of action accrued."

2. SAME—SUIT, WHEN BEGUN—PROCEEDINGS BEFORE REGISTER.

The antecedent proceedings before the register, in which he unwarrantably assumed to decide that the judgment was fraudulent, cannot be considered as a part of this suit; and as, until the bill was filed, no suit was begun, and the bill was not filed until more than two years after the cause of action stated in it accrued to complainant, the suit is barred.

In Equity. Appeal from the decree of the United States district court.

*Charles S. Wolfe, Andrew A. Leiser,* and *George C. Wilson,* for appellant.

*A. H. Dill* and *John M. Kennedy,* for appellee.

McKENNAN, J. The respondent in this bill of complaint was a creditor of the bankrupt, and on the eleventh of March, 1878, took from him a bond with warrant of attorney to confess judgment, in pursuance of which judgment was duly entered on the thirteenth of March, 1878, in the court of common pleas of Union county, Pennsylvania, and thus became a lien upon the bankrupt's real estate in that county. On the thirtieth of March, 1878, a petition was filed by creditors of the bankrupt in the district court in bankruptcy, he was in due course adjudged a bankrupt, and on the eleventh day of June, 1878, an assignment of all his property was duly made to the complainant in this bill. On the twenty-second day of March, 1882, this bill was filed, "with like effect," as agreed in writing by the parties, "as if the same had been filed the sixth September, 1880." The latter date is, therefore, to be taken as the date of the commencement of this suit. As more than two years elapsed after the assignment to the complainant and the commencement of this suit, and this appearing upon the face of the bill, the respondent has interposed a plea alleging that this suit is barred by the limitation prescribed in the second

section of the bankrupt act. The effect of this plea is the only question to be determined.

The second section of the bankrupt act (now section 5057 of the Revised Statutes) enacts that—

"No suit, either at law or in equity, shall be maintainable in any court between an assignee in bankruptcy and a person claiming an adverse interest, touching any property or rights of property transferable to or vested in such assignee, unless brought within two years from the time when the cause of action accrued for or against such assignee."

It is urged that this section is applicable only to contests between an assignee in bankruptcy and an adverse claimant of the title to or ownership of property transferred to such assignee, and hence that this case is not within its operation. There is some warrant for this contention in a few decisions by judges of the district court, and others, in the earlier existence of the bankrupt law, but it rests upon a very narrow construction of that law. Indeed, it does not accord with either the terms or spirit of the enactment. It is not confined to contests involving the title to or ownership of the bankrupt's property, but, in explicit terms, it comprehends all claims of adverse interests which touch or relate to any property or rights of property transferable to or vested in the assignee. The character of the present case furnishes an apt illustration of the scope of the limitation. The bill charges that the contested judgment was confessed and entered under such circumstances as make it a preference in fraud of the bankrupt law, and therefore prays that it may be decreed to be fraudulent and void. The assignee then seeks to annul this judgment, and the respondent to maintain it. It is obvious that the parties represent and claim adverse interests, and their adversary relations grow out of the entry of the judgment, are coincident with the appointment of the assignee, and have so continued ever since.

Does the respondent's claim involve property vested in the assignee? His judgment became a lien upon the bankrupt's real estate, and, thus incumbered, this real estate passed to the assignee. As an inseparable incident of the lien, the real estate bound by it might be seized in execution, sold and conveyed, and a sufficient amount of the proceeds of sale applied to the payment of the judgment. It makes no difference that the real estate has been sold by the assignee discharged of liens, because the fund thus arising is substituted for the land, and is subject to all the liens which bound the land. This fund is as clearly property vested in the assignee as

was the land itself, and the contest between the parties is whether a portion of it, equivalent in value to the amount of the respondent's judgment, shall be appropriated for his benefit, or shall be withdrawn from the grasp of his lien and adjudged exclusively to the complainant. Plainly, therefore, the relations of the parties are adversary, and the suit is one between the assignee and a person claiming an adverse interest "touching" property which was vested in the assignee, and so is within the literal import of the statute of limitations. But whatever differences of opinion may have existed, touching the construction of the limitation clause in question, are now concluded by the authoritative judgment of the supreme court in *Jenkins* v. *International Bank*, 106 U. S. 571; [S. C. 2 Sup. Ct. Rep. 1.] It was held to apply to all suits by or against an assignee which were brought more than two years after the cause of action accrued. Mr. Justice MILLER, in behalf of the court, there said:

"To prevent the estate being wasted in litigation and delay, congress has said to the assignee, you shall begin no suit two years after the cause of action has accrued to you; nor shall you be harassed by suits when the cause of action has accrued more than two years against you. Within that time the estate ought to be nearly settled up, and your functions discharged, and we close the door to all litigation not commenced before it has elapsed."

It only remains to notice the suggestion in the replication to the plea that the contest before the register in bankruptcy was the commencement of this suit. The replication alleges that the district court, on the fifth of February, 1879, made an order of reference to the register of the district to ascertain liens and report a schedule of distribution of the funds in the hands of the assignee; that the judgment of the respondent was presented as a prior charge upon the fund; that the priority claimed was denied, testimony was taken, and a report made by the register of the issues raised before him to the court for its decision upon them; that thereupon, on the sixth of September, 1880, this order was revoked and a new one made to another register to "ascertain the liens, and report a schedule of distribution of the funds in the hands of the assignee arising from the sale of the bankrupt's real estate." The respondent's judgment was presented again before the register, and priority of payment out of the fund claimed. This was contested by the assignee, and the register finally disallowed the claim, upon the ground that the judgment was a fraudulent preference under the bankrupt law, and therefore void, and so reported to the court. The respondent excepted to this finding as irregular and unauthorized, and thereupon, on the eleventh of

January, 1882, this bill was filed, by leave of the court, with like effect as if filed on the sixth of September, 1880.

The antecedent proceedings before the register cannot be ingrafted upon this suit as an integral part of it. The formal incongruity of such an association is apparent. The relief prayed for could only be decreed by the court in the exercise of its auxiliary equity jurisdiction, and that must be invoked by conformity to the methods prescribed and established as indispensable to that end, so that neither party may be deprived of his right to the corrective supervision of the appellate tribunals which the law gives him. In discharging his duties under the order of reference, the register had no power to go behind the respondent's judgment and adjudge it to be void, and his unwarrantable assumption would furnish no ground for investing the court with power to administer such equity in such an irregular mode. Until this bill in equity was filed, no *suit* between the parties was begun in which the relief sought could be adjudged, and, as the bill was not filed until more than two years after the cause of action stated in it accrued to the complainant, the respondent's plea must be sustained, and the bill dismissed, with costs.